and Hudson Valley Transportation, 23776. Good afternoon, your honors. Brian Isaac, I represent the plaintiff appellant. I'm sorry, I don't have a very detailed issue here. I have a very simple issue that's been very well briefed. You're probably happy that you have it. But it's a scope of employment issue. Our position is that as a matter of law, dismissing this case, especially since it's a Fela case, which has a lower burden of proof, easier than a common law claim, summary judgment's almost never appropriate, even if you have the slightest evidence, that the finding that Solante's intoxication took him out of the scope of employment. Just doesn't equate with what Respondent Superior is. And I think both my adversary and I agree that Respondent Superior is simply a legal doctrine which holds that where an employee of an employer operating within the scope of his or her employment commits a tort, liability can be imposed upon the employer. In thinking about how to argue this, because I think it's clear, I came up with the following hypothetical. It's a little ridiculous, but maybe you'll laugh about it. I want you to assume that two identical twins are in a supermarket and they're shopping. They finish shopping and they go on two different lines. I want you to also assume that then two identical twins who are working for the supermarket are pushing carts or U-boats. And that those twins strike the plaintiffs at the same time, same place, with the same injuries. One difference, one twin is just negligent, she's careless. The other twin is high on drugs. Would it make any sense at all in that scenario to say that plaintiff one wins and plaintiff two was injured by the act of someone who was intoxicated? We cited to a plethora of cases, nine to 15 of our brief, which have said, some from this court. One is the Essig case, I know my adversary says Essig is an outlier and it's certainly not a Second Circuit case, but it's directly on point. Which say that the intoxication of an employee does not remove someone from the ambit of Respondent Superior. Especially here, where if I can, the district court said, this is on page 160, quote, Solanti was doing exactly what Metro North hired him to do. So he's doing his job in accordance with his duties. The plaintiff is being transported from the place of disembarkation to where she has her car. She's getting what she wants. The employer, Hudson, has the contract with Metro North. I don't see how in the world this could be a situation where, as a matter of law, in a summary judgment case, you can make a finding that the act wasn't within the scope of employment merely because the employee was intoxicated. And the truth of the matter is that no employer, I don't think, ever wants their employee to act in a way which- These words, just to be more precise, use the words or terms employer and employee. This is actually a principal agent. Yes, it is. I'm just using it generically, so that's 100% true. But there is no, as you know from reading our briefs and from reading my adversary's brief, there's no agency situation here at all, and we're dealing with a feeler claim. I just don't see how, as a matter of law, we lose this case. And all I can think of, and if you have no questions, I'll actually go under my time. I use- When you say that there's no, now you've confused me. Sorry. When you say that there's no agency issue here and that all we're dealing with is a feeler claim, what do you mean? Well, the argument below, I think it's on page 11 of our brief, is that the driver and Hudson were agents of Metro for purposes of applying feeler. That's all I'm saying, I'm not talking about that. But what I'm saying is that responsible people, I think judges, lawyers are responsible people, they call service all the time. They take it because they're tired, they take it because they want to go to an affair, they want a drink, they don't want to drive late at night. If I call a car service and that car service employs an individual who's driving his own car so there's no 388-1 liability and he goes off the road because he's drunk, I can't believe that in that situation I'm left remedy list because he did something that was more dangerous than just operating negligently. And what would happen if someone was going at 100 miles an hour? That would be reckless conduct. Would that set forth a defense to a claim such as this as a matter of law? I just don't see it. So if anything, I thought that we should have been granted summary judgment on the scope of employment issue. But the grant of summary judgment against us, I just think is definitionally wrong, factually wrong, and legally wrong. If you have no questions, thanks for listening to me. I have a simple question. Sure. What is the remedy that you're asking? I'm sorry, Judge, I didn't hear that. What is the remedy that you're seeking from us? The reversal of summary judgment. My case was dismissed. So you want to proceed with the trial? Yes, I do. If there's nothing else, I'll rest on my brief. Thank you. Good afternoon, may it please the court. Beck Fineman with Ryan Ryan DeLuca on behalf of Appellee Metro North Commuter Railroad. I want to be clear on a couple of things. Firstly, I don't think it was clear from the papers below or from the decision from the district court. To the extent that Ms. Francois intends to pursue any sort of direct theory of liability against Metro North, which I believe, at least in the reply brief, she's indicated she does not. That theory would fail on the foreseeability grounds for all the reasons that were outlined in our brief. And I don't want to take my time addressing that today. What I'd like to do is spend my time addressing the fatal flaws in the vicarious liability respondeat superior theory and Ms. Francois' take on that. The first fatal flaw is that the entire premise is, the entire argument is premised on this fallacy that the intoxication can somehow be extricated from the rest of Mr. Solante's conduct. Well, what was the car service hired to do? To transport Ms. Francois from point A to point B. And was that what they were doing? That was what he was doing, yes. So we know that at least the employer's interests were, the Metro North's interests were to get Ms. Francois back to her home station, right? Safely. Well, no, we'll get there. All right, so it was to get her there. Now, if the car service had gone too fast and it was speeding and that was the cause of the accident, in your view, would that be outside the scope of their employment? Not necessarily. Why? Because speeding is the type of carelessness that employers could reasonably foresee and could, and it would be, as a matter of policy, it wouldn't be so outrageous to say to employers. Why wouldn't impairment be an equally, a risk, equal risk that they might anticipate? Because people are charged with DWI all the time. Ministers are charged with it, school marbs are charged with it, judges are charged with it. Sure, but it is the type of egregious conduct that it's not reasonable for an employer to expect it. And one- I don't understand this foreseeability, I don't understand this foreseeability concept in responding at Superior. Foreseeability I understand in terms of negligent hiring, but for the scope of the employment is what decides vicarious liability. And to fold in an idea of negligence or gross negligence and still performing the duties for which they were hired to do, then redefines scope and abrogates the negligence. So I don't understand how folding negligence into the definition of the scope of employment works. Foreseeability in the respondeat superior context is different. It asks a different question. So foreseeability under the direct negligence theory asks whether there was some condition that the employer should have anticipated, some risk that they reasonably should have anticipated and failed to somehow better mitigate against. In the respondeat superior context, and the cases from this circuit speak to this. The foreseeability is whether the type of conduct, either the manner in which the, and in particular in this case, the manner in which an employee goes about his performance of his duties. Is that manner foreseeable to the employer? Is that an issue that can go to a jury ever? Yeah, foreseeability is generally a fact issue, isn't it? Not in the context of respondeat superior, because- Was the contract between Metro North and the cab company before the court? It was not. Well, I suppose Metro North could have said, you won't supply us any drivers who have been taken spirits. But, I mean, I don't understand how Metro North could not anticipate that there might be some negligent drivers out there. And or that part of their negligence might either be excessive speed, failure to yield right away, failure to signal, or perhaps even having two alcoholic beverages, which would then make them impaired. Which is, by the way, what the driver here pled to, not to intoxication, but pled to a violation of vehicle traffic law, not a crime. Impairment, impairment's an easy level to reach in New York. I don't understand how the Metro North couldn't anticipate that that might happen. If we go down that path, Your Honor, we could say that Metro North could anticipate any host of things. But- Well, a number of New York courts have gone down that path. The Fourth Circuit's gone down that path. A number of circuits have gone down that path. I realize that the DC Circuit went the other way. They don't have that many cars there. But I have a real problem, and I can understand. What motivated Judge Carter, I think, here, was this idea of this incredibly intoxicated driver. The problem here is that that's kind of reading between the lines a bit. And what it does is, this is someone who's actually driving the car. They're doing what they're supposed to be. They haven't deviated. They haven't gone off the road and gone to get lunch or something like that. They're a deviation from the intended interests of the employer. It's the interests of the employer that define here what's to be done. And the interest of the employer was to get the conductor back to her home station. I take issue with part of that, Your Honor, respectfully. What Judge Carter said was, yes, Mr. Solante was in the act of driving from point A to point B. That's what he was hired to do. But the manner in which he was doing that, in an intoxicated state, takes us into a different realm. Stop right there. How about 100 miles an hour? I think an argument could be made. I've driven on 287, and some of those folks are rolling. I think an argument could be made that that's also so egregious. But we don't have to draw that line here, Your Honor. Where's the standard here? This is common law stuff. And it's not the statute. You're trying to understand human activity here. And so you say 100 miles an hour, all of a sudden that's outside the scope of the employer. I'm saying, Your Honor- How about 75? I think that the argument could be made that a level of recklessness is different. Under the FELA, I don't think it matters as much. But there is a difference here. And the whole point of- But a child truck driver drives over his appointed hours and gets sleepy. He runs into the back of a car and kills three people coming home from a Christmas party. The tractor trailer driver is driving for his company. Does he operate within the scope of his employment? I think that would depend highly on whether the company had any reason to believe that he was doing that. Which is why I asked you about the agreement between the cab company and Metro North about intoxication. That wasn't introduced below because we have accepted Mr. Solante as an agent up until the point that he gets intoxicated. And to go back to the foreseeability issue, if we're going to apply New York common law or other common law states, which I think is a mistake. But if we're going to apply those concepts, then foreseeability is the most important factor under Raviello. And every court since then has said that. And the foreseeability factor there is exactly whether the type of conduct at issue is the type of conduct that it's fair to charge an employer with anticipating. If we say, your honor, it's fair to charge Metro North with the knowledge that some people might perform their duties drunk. Then the FULA becomes essentially a strict liability statute. Because you could say they should anticipate just about anything. If you read some of the cases of some of the conduct that Metro North has seen among its thousands of employees over the four decades it's been in existence. Nothing should surprise the railroad anymore. But that doesn't mean that it's fair to charge the railroad with foreseeable knowledge that somebody would perform their duties drunk. Intoxication is fundamentally, qualitatively different. And that's why it's fair to treat it that way. But I'm telling you this fellow pled guilty to impairment. So talk about impairment, don't talk about intoxication. Okay. Driving, operating or performing one's duties under the impairment, being impaired by some intoxicating substance, is also- It's not a crime. I'm sorry? It's not a crime. Well, he was convicted of a crime. He pled guilty of violation, operating while impaired. I have the conviction right here. Appendix 103. Yes. Yeah, he didn't plead guilty to a crime. He pled guilty to a violation of the vehicle traffic law. Driving while impaired is a crime. And if, your honor, I think it would also be dangerous to say, okay, driving while impaired, that's fine. You should expect that. Driving while intoxicated, that's something different. Then we're going to get into how intoxicated was that person? Does that person have a tolerance? I mean, there are all kinds of factors. So any alcohol involved with them? Even if they had any kind of alcohol involved with them, that would take them outside the scope? I would argue yes. Okay. Yes, I think that there is something qualitatively different about being intoxicated. So would you just, because I'm not sure that I fully understood your answer with respect to the foreseeability component of this, which you've been focused on. Is that an issue that can ever get to a jury? In other words, is that an issue, even under, or in the context of a field action, that can get to a jury? In a direct? In a context. I suppose I could conceive of some circumstance where it could get to the jury. Like what? I would say, let's say that there was some, let's say you're talking about an intentional tort. And there's a question about whether an employee has violent propensities and whether those propensities were known to the employer. The extent of knowledge that goes to foreseeability, that could go to a jury. We don't have that here, though. What we have is a clear record that he was driving at least while impaired. So let's say that there was some evidence, just to use maybe another hypothetical, that there were a number of these drivers that Metro-North regards, at least for purposes of this case, as agents, right? Who were driving while impaired and had, on some number of occasions, as a result of their impairment, gotten into an accident where an employee of Metro-North got hurt. Would that be a foreseeability issue that would then go to, or could then go to a jury? I think then you're into the direct negligence theory. Because then you're saying Metro-North should have known something. So what is it particularly about or what distinguishes the vicarious liability foreseeability component, then, in your view? So the foreseeability in responding out superior doesn't require that the employer appreciate a certain confined risk of injury and should have done something to mitigate that. It should, the question is, should the employer have foreseen the conduct that's at issue? So in this, which often poses a risk, but the question is really focused on the conduct. So in this case, it would be not just did Metro-North have some reason to know that Mr. Solante would show up drunk or that his taxi cab company would show up drunk. That's the direct negligence theory. The question here is whether there's any reason beyond mere speculation to say that Metro-North should have anticipated that Mr. Solante would, or any of its agents, would show up, any of its agents would show up drunk. That's what, that was what my question was directed to. And why isn't that categorically similar to foreseeability in the direct liability context? So we have issues of typicality or atypicality that seem to me to be just analytically more or less the same. And I appreciate the policy problem that Metro-North doesn't want to be responsible for every impaired or drunk driver that's, that works for it or works for an agent of Metro-North. But why just analytically is that, is that different in type? There might be cases where there's overlap. There, but there are cases where there won't be an overlap. So let's say that there is, there's no foreseeable risk involved in the driving itself from point A to point B. There, the foreseeable risks that Metro-North might be on the hook for are if there's bad weather or if there is ordinary negligence. They, I think it's fair to say so many people speed and you can look to the fact that employers often have GPS in their vehicles, in their company vehicles to monitor employee speed. But I've never heard of an employer having a breathalyzer to monitor whether their drivers are intoxicated or impaired or have consumed any alcohol. So the risk goes beyond the ordinary risks that are, that we all accept as part of the risks of driving, being either a driver or passenger on the road. And this is where I think ESSIG went wrong because the ESSIG court said, yeah, we all accept these risks. And one of the risks that we should all accept as just one of the ordinary risks of being a passenger or a driver on the road is that the driver next to you might be impaired. Or the driver who picks you up or your fellow employee might be impaired. And you should be okay with that because we all know that it happens sometimes. This, of course, is all under this cloud of our own decisions about FEALA, because this is all under FEALA. Where we've said that there is a strong federal policy in favor of letting drivers. This is about a Metro-North employee who got in a car that her employer had her get into to take her home. And that car then was driven by someone who was intoxicated. The Metro-North now says it's not responsible for, notwithstanding the fact that it chose the car company. And chose to drive with the company, and therefore doesn't owe her a dime. Well, let me respond to that, Your Honor, because that's the direct negligence theory. Which is an ironic result. It might appear as such. But if we try to draw lines in each case as to whether we think the plaintiff is entitled to recover, we're going to make bad law. So, and I should also- Well, I've been accused of that before, and I'm still around. I also, if I might, Your Honor, in finishing and responding to that, if I might just finish my response to that. It doesn't, this outcome doesn't leave, or shouldn't have left Ms. Francois without a remedy at all. She had the opportunity to have a remedy against Mr. Solante directly, or against his employer. And she chose not to pursue that. So we'll hear from- Thank you. Thank you. Your Honor, again, I'll be brief. I think what my adversary has told you is that any time someone's behind the wheel and is accused of being, not intoxicated, you're right, Judge Wesley, 103, paid a $300 fine too, but impaired. It's out. There's no responding and supporting liability. What's your answer to this concern the Metro-North has got? Everyone has a concern. No employer ever wants their employee to be drunk, and they don't want them to commit torts. Respondent Superior specifically says that if you're furthering your employer's interests, which my adversary just admitted, the doctrine applies. He's talking about foreseeability in terms of negligence cases. The Riviello Court, where he spoke about foreseeability, this is what the Riviello Court actually said, quote. The test is whether the act was done while the servant was doing his master's work, no matter how irregularly or with what disregard of instructions. And I'm just going to say one other thing, and then I'll sit down. I'd like you to read your decision, Second Circuit decision, not Essig, Nelson against American West. Quote, the fact that, and this is in brackets, a drunken boat swing, close brackets, had made himself incompetent to further the ship's business was immaterial. The owner had selected him to command whatever his defects and addictions. That's the right area, that's the right application. Thank you. Yes. That guy over there. Okay, thank you very much. We'll reserve decision.